

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
06/04/2014

| | | |
|---|---|---|
| IN RE: | § | |
| **JIMMY RAMIREZ** | § | **CASE NO: 12-34472** |
| and | § | |
| **CANDY JOANN TOOPS** | § | |
| Debtor(s) | § | |
| | § | **CHAPTER 13** |
| | § | |
| **JIMMY RAMIREZ** | § | |
| Plaintiff(s) | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 13-03067** |
| | § | |
| **MR. TRANSMISSION**, *et al* | § | |
| Defendant(s) | § | |

## AMENDED MEMORANDUM OPINION

Jimmy Ramirez's 2001 Ford F-250 was wrongfully repossessed post-petition pursuant to a valid mechanic's lien held by Mr. Transmission. The Truck was retained by Mr. Transmission's agent, Texas Mechanical Collection Service, for approximately four months after repossession. Mr. Ramirez filed suit against both Mr. Transmission and Texas Mechanical for violations of the automatic stay and the Federal and Texas Fair Debt Collection Acts. Texas Mechanical filed a cross-claim against Mr. Transmission to collect the fees it incurred in repossessing the Truck and for fraud by non-disclosure.

For the reasons set forth below, the Court finds that:

- Under 11 U.S.C. § 362, Mr. Transmission and Texas Mechanical are jointly and severally liable for $9,444.75 in damages, Mr. Ramirez's attorney's fees and costs and a to-be-determined amount of punitive damages.

- Pursuant to the constructive bailment relationship between Mr. Ramirez and Mr. Transmission, Mr. Transmission and Texas Mechanical are liable for $6,386.99 in physical damage to the Truck, which $6,386.99 is included in the $9,444.75 in total damages.

- Texas Mechanical is also liable for the $9,444.75 in damages and Mr. Ramirez's attorney's fees and costs under the Fair Debt Collection Act.

- Neither defendant is liable under the Texas Debt Collection Act.

- Mr. Transmission is liable to Texas Mechanical for $5,584.00 in costs and expenses incurred to repossess the Truck.

- Mr. Transmission is not liable to Texas Mechanical under a theory of fraud by non-disclosure.

- Mr. Transmission is not required to reimburse Texas Mechanical for the punitive damages and attorney's fees that Texas Mechanical owes to Mr. Ramirez.

## Background

In May, 2011, Mr. Ramirez had his 2001 Ford F-250 repaired at a Mr. Transmission franchise owned by Ronnie Weiss.  Mr. Ramirez issued two post-dated checks to Mr. Transmission for the services.  Mr. Ramirez filed a bankruptcy petition on June 3, 2011 (Case No. 11-34675).  At the advice of his counsel, Mr. Ramirez canceled the two post-dated checks upon filing Case No. 11-34675.  Case No. 11-34675 was dismissed on January 31, 2012.  On March 3, 2012, Mr. Transmission executed a letter of authorization, authorizing Texas Mechanical Collection Service to repossess the Truck.  Mr. Ramirez filed his current chapter 13 case on June 6, 2012.  An order extending the automatic stay was entered on June 28, 2012. Case No. 12-34472, ECF No. 14.  Mr. Ramirez's plan was confirmed on August 28, 2012.  Case No. 12-34472, ECF No. 35.

Mr. Weiss acknowledges that he received notice of the second bankruptcy filing.  Mr. Weiss did not inform Texas Mechanical of the second bankruptcy because he forgot that he had retained Texas Mechanical to repossess the Truck.  ECF No. 35.  On February 6, 2013, Texas Mechanical repossessed the Truck from Mr. Ramirez's daughter, Lacy Ramirez's, house.  Lacy

believed the Truck had been stolen and called the police.  The police informed her that the Truck had been repossessed at the request of Mr. Transmission pursuant to a mechanic's lien.

Mr. Ramirez's former bankruptcy attorney, Alexander Wathen, testified that he spoke to counsel for Mr. Transmission on February 8, 2013.  He testified that he spoke with Raymond Hutchison, the principal of Texas Mechanical, at least two to three times in March, 2013, but did not recall speaking with him before March, 2013.  Mr. Hutchison testified that he first learned of the bankruptcy in late May when he was served in this adversary proceeding.  Mr. Hutchison admitted that Mr. Ramirez contacted him a few days after the repossession and informed him that Mr. Ramirez was in bankruptcy.  Mr. Hutchison testified that on the day of the repossession, he was informed by someone at Mr. Transmission that it was not in a bankruptcy with Mr. Ramirez.[1]  Mr. Weiss testified that he affirmatively informed Mr. Hutchison of the bankruptcy sometime in early February, and instructed Mr. Hutchison to return the Truck to Mr. Ramirez.

It is not clear from the evidence what date Mr. Ramirez spoke with Texas Mechanical and informed it about his bankruptcy, but it was shortly after he received a notice of foreclosure from Texas Mechanical.  After learning of the bankruptcy from Mr. Ramirez, Mr. Hutchison attempted to ascertain from Mr. Transmission whether Mr. Ramirez was, in fact, in bankruptcy. At some point in early February, Mr. Transmission informed Mr. Hutchison of the bankruptcy. Mr. Ramirez has the burden of proving when Mr. Hutchison knew of the bankruptcy.  *See In re Coats*, 168 B.R. 159, 165 (Bankr. S.D. Tex. 1993).  Since Mr. Ramirez did not produce evidence of a specific date, the Court will construe the meaning of "early February" liberally in favor of

---

[1] Mr. Weiss asserts that he did not inform Mr. Hutchison as such, but was unsure whether his son, Joshua Weiss, spoke with Mr. Hutchison about the bankruptcy. Mr. Hutchison testified that he spoke with Mr. Weiss' son about the repossession. It is not clear who inaccurately informed Mr. Hutchison that Mr. Transmission was involved in Mr. Ramirez's bankruptcy.

Mr. Hutchison.  The Court therefore determines that Mr. Hutchison learned of the bankruptcy on February 10, 2013.

Mr. Hutchison refused to return the Truck because he wanted to be paid for his efforts in repossessing the Truck.  He claims that he incurred $3,295.00 in efforts to repossess the Truck.[2] Pl.'s Ex. 12.  Mr. Hutchison's standard fee for a mechanical repossession is usually $1,295.00. The amount he decides to charge is based on the hours he has to put into the repossession.  In this case, he had to make several trips out of town which increased the fee.  Mr. Hutchison kept no records of the costs incurred in locating the Truck.  He testified that he made notes on loose paper, but kept no formal records.  Mr. Hutchison testified about steps he took to locate the Truck including running the license plate, checking addresses, going to the registered address multiple times, running names and Texas Driver Licenses, and checking next of kin and addresses for next of kin.  Mr. Weiss never offered to pay these expenses and testified that he could not afford to do so.

**Damages**

### Physical damage to the Truck

Mr. Ramirez submitted pictures of the exterior of the Truck taken pre-repossession.  Pl.'s Ex. 21.  Veronica Chavez of Trevco Insurance testified that these pictures were taken in February, 2011 when Mr. Ramirez bought his insurance policy with Trevco.  The February, 2011 pictures show that the Truck was in pristine condition—there are no visible dents or significant scratches on the Truck.  Mr. Ramirez also submitted a picture of the exterior of the Truck taken in January, 2013, still in pristine condition.  Pl.'s Ex. 33.  Mr. Ramirez, Lacy Ramirez and Mr.

---

[2] Plaintiff's Exhibit 12 is an invoice created by Texas Mechanical. It claims that Texas Mechanical was owed $6,623.00 for the Truck which included $3,295.00 for the repossession service, $2,961.00 for storage of the Truck and $367.00 in other miscellaneous fees. Texas Mechanical's cross-claim alleges that it incurred $5,584.00 in costs and expenses in repossessing the Truck. The Court will assume that the figure in Texas Mechanical's cross-claim is the total amount it seeks for the repossession.

Ramirez's brother, Frank Ramirez, all testified that Mr. Ramirez kept his truck in immaculate condition.  They testified that all of the damage to the Truck occurred while it was in Texas Mechanical's possession.

Mr. Ramirez submitted pictures of the Truck post-repossession.  Pl.'s Ex. 22.  These pictures show significant damage to the Truck including specks of white paint covering the body of the Truck, dents and scratches to the rear bumper, dents to the front license plate, and rips in the seats.  The entire dash board of the Truck was removed, and there were large amounts of trash in the bed and back seat of the Truck.  The tires were also changed—the pre-repossession pictures show tires with white writing on them, but the tires in the post-repossession pictures do not have writing on them.

Mr. Hutchison testified that he did not cause any damage to the Truck, and was unaware of how any of the damage occurred.  He kept the Truck stored in an open storage yard because this is the only facility with which he is registered.  Mr. Hutchison concedes that any other wrecker driver with access to the facility would have had access to the Truck and could have damaged it.  In its post-trial brief, Texas Mechanical argues that neither it nor Mr. Transmission should be held liable for the damage to the Truck.  ECF No. 52 at 4.  Texas Mechanical asserts that Mr. Ramirez should seek redress from the third-party storage company because the Truck was damaged while stored at the third-party's facility.  ECF No. 52 at 4.

At the June 26, 2013 hearing, the parties agreed to return the Truck to Mr. Ramirez.  On the same date, Mr. Hutchison had the Truck transported on a wrecker to 5442 Almeda Road to a Chase Bank parking lot.  Mr. Ramirez was unable to get the Truck to start and had GEICO tow it to Freeport, Texas.  Mr. Ramirez sent the Truck in for mechanical repairs on August 15, 2013, and got the Truck back on September 14, 2013.  He paid $596.44 for these repairs.  Mr. Ramirez

waited until August to have the Truck repaired because he could not afford to repair it sooner. As of the date of trial, Mr. Ramirez did not have any cosmetic repairs done on the Truck.  He had received an estimate of $5,790.55 for such repairs from Bobby Ford, Inc., in Richwood, Texas.

**Lost wages**

Mr. Ramirez testified that he missed sixty three hours of work in connection with this adversary proceeding.  Mr. Ramirez is paid at a rate of $26.00 per hour for a total of $1,638.00 in lost wages.  Mr. Ramirez testified that after the repossession he was given the opportunity to work for Air Liquide in La Porte, Texas making $28.00 per hour for six weeks.  He passed the necessary physical for the job, but was unable to accept the position because he could not transport the necessary tools without his truck.  Frank Ramirez testified that he is a foreman at Air Liquide and had the ability to hire his brother as a boilermaker at $28.00 per hour.

As the Court indicated at trial, it will not consider the lost opportunity at Air Liquide in determining Mr. Ramirez's damages.  At the time of repossession Mr. Ramirez was living in Clute, Texas.  The job at Air Liquide would have required approximately 160 miles of round-trip travel each day.  Any increase in pay would have been offset by the cost of commuting 160 miles each day.

**Other damages**

Mr. Ramirez testified that he incurred $667.04 in mileage costs associated with this adversary proceeding.  Mr. Ramirez rented a truck for two weeks beginning February 26, 2013 for a total cost of $410.00.  Mr. Ramirez also rented a truck from June 26, 2013 through July 25, 2013, however GEICO paid the majority of this bill—Mr. Ramirez paid $47.54 of the $1,378.69 bill.  Mr. Ramirez testified that when he received the Truck back, it was missing a radar detector,

a MagLite flashlight and a backyard umbrella with a total replacement cost of $270.18.   Mr. Ramirez also obtained copies of his cell phone bills for the trial at a cost of $25.00.

## Procedural Background

Mr. Ramirez filed this adversary proceeding on April 2, 2013, alleging violations of the automatic stay and alleging violations of the Texas and Fair Debt Collection Acts.   Mr. Transmission and Texas Mechanical were served on May 22, 2013.   ECF Nos. 10 & 11.   Mr. Transmission filed its answer on June 21, 2013.   ECF No. 15.   The Truck was turned over to Mr. Ramirez on June 26, 2013.   Texas Mechanical filed its answer and cross-claim against Mr. Transmission for the fees incurred to repossess the Truck and for fraud by non-disclosure on October 16, 2013.   ECF No. 29.   Trial was held on December 13, 2013.   The parties submitted their post-trial briefs on January 31, 2014.   ECF Nos. 52-54.   Mr. Ramirez's post-trial brief alleges new causes of action not raised in his complaint for negligence, conversion and vicarious liability of Mr. Transmission.   Mr. Transmission filed its objection to the new causes of action on February 3, 2014.   ECF No. 55.   Mr. Transmission's objection is sustained—the Court will not consider the causes of action pled after trial.

## Findings of Fact

The Court makes the following relevant findings of fact:

- Mr. Ramirez had his 2001 Ford F-250 repaired at a Mr. Transmission franchise owned by Ronnie Weiss in May, 2011.

- Mr. Ramirez failed to fully pay for these repairs, entitling Mr. Transmission to a mechanic's lien on the Truck.

- On March 3, 2012, Mr. Transmission executed a letter of authorization, authorizing Texas Mechanical Collection Service to repossess the Truck.

- Mr. Ramirez filed his second chapter 13 bankruptcy on June 6, 2012 and timely notified Mr. Transmission of the case.   As of that date, the truck had not been repossessed.

- Mr. Transmission inadvertently failed to inform Texas Mechanical of the bankruptcy.

- The Truck was repossessed post-petition on February 6, 2013.

- Texas Mechanical learned of the bankruptcy filing on February 10, 2013.

- Texas Mechanical incurred $5,584.00 in costs and fees related to repossession of the Truck.

- Texas Mechanical refused to return the Truck to Mr. Ramirez until it received payment for its repossession efforts.

- Mr. Transmission refused to pay Texas Mechanical for its repossession efforts.

- The Truck was in immaculate condition until it was repossessed.

- The Truck was damaged while in Texas Mechanical's possession.

- Texas Mechanical did not directly cause the damage to the Truck.

- Mr. Ramirez incurred $9,444.75 in damages as a result of the repossession.

## Analysis

### I.      Authority to enter final judgment

Whether a bankruptcy court can enter a final judgment in a case depends on whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process. *Stern v. Marshall*, 131 S. Ct. 2594, 2618, 180 L. Ed. 2d 475 (2011). If the action does not stem from the bankruptcy itself, or need not be resolved in the claims allowance process, the claim belongs in an Article III court. *Id*. Under this test, state common-law claims are private rights which must be heard by an Article III court. *Id*. at 2611. In the recent *In re BP RE, LP* opinion, the Fifth Circuit held that even with the consent of all parties, bankruptcy judges cannot enter final judgments in cases that belong in an Article III court. *In re BP RE, L.P.*, 735

F.3d 279, 281 (5th Cir. 2013) (*reh'g en banc denied by In re BP RE, L.P.*, 744 F.3d 1371 (5th Cir. 2014)).

Texas Mechanical's cross-claim against Mr. Transmission is a state law claim between two non-debtor entities that would not be resolved in the claims allowance process.  It must be adjudicated by an Article III court, and the parties' consent cannot cure this deficiency.  Accordingly, the Court cannot enter a final judgment on Texas Mechanical's cross-claim.[3]

## II.     Violation of automatic stay

11 U.S.C. § 362 provides in pertinent part that:

> "A petition filed under section 301, 302 or 303 of this title…operates as a stay to all entities, of…any act to create, perfect or enforce any lien against property of the estate…an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

11 U.S.C. § 362 (a)(4) and (k)(1).

A willful violation of the automatic stay occurs when a creditor, with knowledge of the stay, seizes the debtor's property without first obtaining relief from stay from the bankruptcy court.[4]  *In re Chesnut*, 422 F. 3d 298, 300 (5th Cir. 2005).  Whether the party believes in good faith that it had a right to the property is not relevant to a determination of whether the act was willful or whether compensation should be awarded.  *Id*. at 302.

---

[3] The Court has the authority to enter a final judgment on Mr. Ramirez's claims.  Mr. Ramirez's claims deal with the violation of the automatic stay.  His claims stem from the bankruptcy itself and are squarely within this Court's statutory and constitutional authority.  *See Stern v. Marshall*, 131 S. Ct. at 2605.  For the sake of efficiency, the Court will issue a comprehensive report and recommendation to the district court on all of the issues before it.

[4] Even when a party does not have notice of the bankruptcy, any acts that violate the stay are voidable and can be voided by the bankruptcy court. *See In re Coho Res., Inc.*, 345 F.3d 338, 344 (5th Cir. 2003) (because bankruptcy courts have statutory power to annul stay, acts violating stay are voidable rather than void *ab initio*).

If a party has knowledge of the bankruptcy filing, the party is imputed with knowledge of the automatic stay. *In re Coats*, 168 B.R. at 166. Courts are split on whether it is sufficient to charge a party with having knowledge of the bankruptcy when it is only given oral notice. *See In re Freemyer Indus. Pressure, Inc.*, 281 B.R. 262, 267 (Bankr. N.D. Tex. 2002) (oral notice of a filing is sufficient to require a party to observe the stay); *compare with, In re Collier*, 410 B.R. 464, 472 (Bankr. E.D. Tex. 2009) (party cannot reasonably be charged with knowledge of bankruptcy until it possesses written notice). When a bankruptcy petition is filed, an automatic stay operates as a self- executing injunction. *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 354-55 (5th Cir. 2008). Requiring formal written notice does not always comport with the self-executing, immediate nature of the automatic stay. Accordingly, the Court joins those courts that have held that oral notice may be sufficient to prove knowledge of the stay.

Once a party is given notice of the stay, it is the party's responsibility to ascertain whether a bankruptcy case has actually been commenced. *In re Freemyer Indus. Presure, Inc.*, 281 B.R. at 267. It is undisputed that shortly after repossession, Mr. Ramirez gave Texas Mechanical oral notice of his bankruptcy. Texas Mechanical then had the duty to ascertain the truthfulness of Mr. Ramirez's representation. Mr. Hutchison testified that he attempted to do so by asking Mr. Transmission whether it was a party to a bankruptcy, and was informed that it was not. Mr. Weiss denies having such a conversation with Mr. Hutchison. The Court found both witnesses to be credible and believes that someone at Mr. Transmission, albeit not Mr. Weiss, told Mr. Hutchison that Mr. Transmission was not a party to Mr. Ramirez's bankruptcy. However, Mr. Weiss also testified that he informed Mr. Hutchison of the bankruptcy sometime in early February. Even if someone at Mr. Transmission initially informed Mr. Hutchison that

Mr. Transmission was not a party to Mr. Ramirez's bankruptcy, this representation was corrected soon after.

As discussed above, there was no evidence of the exact date on which Texas Mechanical learned of the bankruptcy. Because it is Mr. Ramirez's burden to prove violation of the stay, the Court will construe "early February" liberally in favor of Mr. Hutchison and determines that Mr. Hutchison had knowledge of the bankruptcy on February 10, 2013. Accordingly, Mr. Transmission has sole liability for all damages resulting from violation of the automatic stay that occurred before February 10, 2013. Mr. Transmission and Texas Mechanical are jointly and severally liable for all damages that occurred on or after February 10, 2013. Because there is no evidence that any damages were incurred prior to February 10, 2013, the Defendants are jointly and severally liable for all of Mr. Ramirez's damages.

Pursuant to 11 U.S.C. § 362(k), Mr. Transmission and Texas Mechanical are jointly and severally liable for $9,444.75 in actual damages and for Mr. Ramirez's attorney's fees and costs.

### III.    Agency

Mr. Transmission asserts that its liability should be limited to damages that occurred prior to instructing Texas Mechanical to return the Truck to Mr. Ramirez. Mr. Transmission argues that once it told Texas Mechanical to return the Truck, the agency relationship terminated and Texas Mechanical was no longer acting within the scope of its agency.

"In determining a principal's vicarious liability, the proper question is not whether the principal authorized the specific wrongful act; if that were the case, principals would seldom be liable for their agents' misconduct." *Nat'l W. Life Ins. Co. v. Newman*, 02-10-00133-CV, 2011 WL 4916434 (Tex. App. Oct. 13, 2011). The proper test for actual authority is whether the agent's acts were within the course and scope of his agency. *Id*. Since the principal has selected

the agent to act in a venture in which the principal is interested, it is fair, as between him and a third person, to impose upon him the risk that the agent may exceed his instructions. *Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96, 99 (Tex. 1994).

Mr. Transmission is correct that once it instructed Texas Mechanical to return the Truck, the agency relationship was terminated.  Termination of the agency relationship does not shield Mr. Transmission from liability for actions it set into motion during the agency relationship.  The fees that accrued for Texas Mechanical's collection efforts are a consequence of Mr. Transmission's failure to timely inform Texas Mechanical of Mr. Ramirez's bankruptcy. Assuming that Mr. Ramirez was not in bankruptcy and Texas Mechanical successfully repossessed the Truck, Mr. Transmission had an obligation to pay Texas Mechanical for its repossession efforts.  There is no reason that Mr. Transmission's failure to notify Texas Mechanical of the bankruptcy would result in it not having to pay Texas Mechanical's fees.  Mr. Transmission had a contractual duty to pay the fees to Texas Mechanical and is liable for any damage that resulted from its failure to pay the fees.

Mr. Transmission cannot argue that once it told Texas Mechanical to return the Truck it was absolved of its duty to Mr. Ramirez.  Mr. Transmission was required to remedy its stay violation—if that meant paying Texas Mechanical for the services rendered, Mr. Transmission was required to do so.[5]

As between Mr. Ramirez and Mr. Transmission, agency law provides that Mr. Transmission bears the risk that Texas Mechanical exceeded the scope of its authority.  Although Mr. Transmission instructed Texas Mechanical to return the Truck, it had a duty to go beyond

---

[5] This duty in no way diminishes Texas Mechanical's unqualified duty to return the Truck, with or without being paid for the services it rendered.

merely instructing the return of the Truck and pay the fees needed to ensure that the Truck was returned.

## IV.    Bailment

The Court asked the parties to brief whether the principals of bailment law are applicable to the relationship between Mr. Ramirez and the Defendants.

To create a bailment, there must be (1) delivery of personal property from one person, the bailor, to another, the bailee, for a specific purpose; (2) acceptance of delivery by the bailee; (3) an express or implied contract between the parties that the specific purpose will be realized; and (4) an agreement between the parties that the property will either be returned to the bailor or dealt with according to the bailor's direction.  *State v. $281,420.00 in United States Currency*, 312 S.W.3d 547, 551 (Tex. 2010).

American Jurisprudence 2d Bailments provides that:

> "A 'constructive bailment' or 'involuntary bailment' arises where the person having possession of a chattel holds it under circumstances that the law imposes on him or her the obligation of delivering it to another, where a person has lawfully acquired possession of personal property of another otherwise than by a mutual contract, or where a person has lawfully acquired the possession of personal property of another and holds it under circumstances whereby he or she should, on principles of justice, keep it safely and restore it or deliver it to the owner."

8A Am. Jur. 2d *Bailments* § 12 (2009).

While the Court knows of no applicable Texas state case, it is apparent that the relationship between Mr. Transmission and Mr. Ramirez falls squarely within the definition of a constructive bailment.[6]  *See e.g. S. Indus. Sav. Bank v. Greene*, 224 So. 2d 416 (Fla. Dist. Ct. App. 1969) (creditor that peaceably repossessed automobile became constructive bailee).

---

[6] Although Mr. Transmission did not lawfully acquire the Truck because of the automatic stay, generally speaking, repossession pursuant to a mechanics lien would be a lawful acquisition of property.

Bailments are either gratuitous or for mutual benefit.  Even if the bailee is not actually paid by the bailor, a bailment is one for mutual benefit so long as the bailment was made as an incident of a business in which the bailee makes a profit.  *Andrews v. Allen*, 724 S.W.2d 893, 895 (Tex. App.—Austin 1987, no writ).  The constructive bailment between Mr. Ramirez and Mr. Transmission was a bailment for mutual benefit—Mr. Transmission would receive satisfaction of the debt owed to him, and Mr. Ramirez would no longer owe the debt to Mr. Transmission.

In a bailment for mutual benefit, the bailee is liable for its ordinary negligence.  *Andrews v. Allen*, 724 S.W.2d at 896.  When goods have been committed to a bailee and are returned in a damaged condition, and the bailee's liability depends upon his negligence, negligence is presumed and the burden is on the bailee to produce evidence of some other cause of the damage.  *Mayhar v. Triana*, 701 S.W.2d 325, 326 (Tex. App.—Eastland 1985, writ ref'd).

Texas Mechanical chose the storage yard for the Truck.  It knew that other wrecker drivers would have access to the Truck while it was stored in the yard.  Texas Mechanical was negligent in leaving the Truck in the open storage yard.  Mr. Transmission had a duty to return the Truck to Mr. Ramirez in the same condition as when it was repossessed (or to maximize its value in a foreclosure sale).  Mr. Transmission breached this duty through its agent, Texas Mechanical.  Texas Mechanical assumed the risk that the Truck might be damaged while in its possession.  Because Texas Mechanical was acting as Mr. Transmission's authorized agent, Mr. Transmission assumed this risk.

While Texas Mechanical did not actually inflict any damage on the Truck, it allowed the Truck to be damaged.  Texas Mechanical's argument that the third-party storage company should be liable for the damage to the Truck is unavailing.  This is not an instance where an unforeseen third party was responsible for the damage to the Truck.  Texas Mechanical chose to store the

Truck in the open yard knowing that it could be damaged by third parties.  It cannot now shift the blame for damage that resulted from its failure to choose a more secure storage facility.[7]

Although the agency relationship between Mr. Transmission and Texas Mechanical may have terminated when Mr. Transmission told Texas Mechanical to return the Truck, this did not terminate the constructive bailment relationship between Mr. Transmission and Mr. Ramirez.  As constructive bailee, Mr. Transmission had a duty to return the Truck to Mr. Ramirez.  Mr. Transmission is liable under a constructive bailment theory for the physical damage to the Truck while in Texas Mechanical's possession.

Under principals of agency, Texas Mechanical is also liable for the damage to the Truck.[8] Texas Mechanical was the agent of the bailee, Mr. Transmission.  Under Texas law, an agent is held liable for his or her own negligence if such negligence caused reasonably foreseeable harm to a third-party.  *See Maint., Inc. v. ITT Hartford Group, Inc.*, 895 S.W.2d 816, 819 (Tex. App.— Texarkana 1995, writ denied).  As discussed above, the damage to the Truck was reasonably foreseeable to Texas Mechanical.

Mr. Transmission is liable for $6,386.99 in damage to the Truck under a theory of constructive bailment.  Texas Mechanical, as agent of Mr. Transmission, is liable for $6,386.99 in damage to the Truck under a theory of negligence.

## V.      Fair Debt Collection Act

Mr. Ramirez claims that Texas Mechanical violated the Fair Debt Collection Practices Act by using deceptive, unconscionable and unreasonable means to collect a debt;

---

[7] The Court expresses no view on whether Texas Mechanical or Mr. Transmission may have a claim against the storage yard.

[8] Assuming that the agency relationship between Mr. Transmission and Texas Mechanical at some point terminated, Texas Mechanical either became a bailee in its own right, or was wrongfully in possession of the Truck. Regardless of whether Texas Mechanical was Mr. Transmission's agent, a bailee, or wrongfully in possession of the Truck, it had a duty to return the Truck to Mr. Ramirez undamaged.

misrepresenting the status of a covered debt; and threatening to take actions it is legally not able to take.  ECF No. 1 at 4.  Texas Mechanical committed several violations of the FDCA.

15 U.S.C. § 1692(e)(5) provides that:

> "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section…the threat to take any action that cannot legally be taken or that is not intended to be taken."

There is a split in authority on whether § 1692(e)(5) provides a cause of action only when a defendant has threatened to take an illegal action, or if it also provides a cause of action when an illegal action is actually taken.  *See Bradshaw v. Hilco Receivables, LLC*, 765 F.Supp.3d 719, 730 (D. Md. 2011) (majority view is that §1692(e)(5) applies to threats of illegal action as well as actually taking illegal action); *but see Cox v. Hilco Receivables, L.L.C.*, 726 F.Supp.2d 659, 666 (N.D. Tex. 2010); (citing *Meroney v. Pharia, LLC*, 688 F.Supp.2d 550, 554 (N.D. Tex. 2009) (§ 1692(e)(5) applies only to threatened action, not to actions already undertaken)).  The plain language of the statute supports the conclusion that only a threat of illegal action is actionable under § 1692(e)(5).

15 U.S.C. § 1692(e) deals with false, deceptive or misleading representations.  Making a threat to take an action that one cannot legally take or that one does not actually intend to take is plainly false or misleading.  It is not clear why actually taking an illegal action, while perhaps unconscionable, is false, deceptive or misleading.  *Bradshaw v. Hilco Receivables* cites to *Sprinkle v. SB & C Ltd.*, which reasoned that it would be futile for a statutory scheme to provide more protection to debt collectors who violate the law than to those who merely threaten to violate the law.  *Bradshaw v. Hilco Receivables, LLC*, 765 F.Supp.3d at 730 (citing *Sprinkle v. SB & C Ltd.*, 472 F.Supp.2d 1235, 1247 (W.D. Wash. 2006).

The Court respectfully disagrees with the *Sprinkle* Court as the FDCA is not, in fact, affording more protection to debt collectors who actually violate the law.   Section 1692(f) provides redress for unconscionable debt collection practices.   The § 1692(f) laundry list is a non-exclusive list.   Although an illegal action is not enumerated as an unconscionable action in § 1692(f), it is undoubtedly included within the scope of §1692(f).   Because debt collectors that actually violate the law are culpable under § 1692(f), it is incorrect to say that they are held less culpable under the FDCA than debt collectors that merely threaten to violate the law.[9]

Despite the foregoing discussion, the Court is bound by Fifth Circuit precedent and must find that Texas Mechanical violated §1692(e)(5) of the FDCA.   In *Poirier v. Alco Collections*, the Fifth Circuit held that to violate § 1692(e)(5), defendants must have threatened to take action which they were prohibited by law from taking.   *Poirier v. Alco Collections, Inc.*, 107 F.3d 347, 349 (5th Cir. 1997).   However, *Poirier* goes on to hold that the defendant violated § 1692(e)(5) when it took action that cannot legally be taken.   *Id.* at 351.   This latter language in *Poirier* says that § 1692(e)(5) can be violated by taking an illegal action, regardless of whether there was also a threat to take such illegal action.   The Court is bound by *Poirier* and therefore holds that § 1692(e)(5) can be violated when an illegal action is taken, regardless of whether there is also a threat of illegal action.

Texas Mechanical violated the FDCA when it refused to return the Truck in contravention of the automatic stay.   Accordingly it is liable under the FDCA for all damages resulting from its violation of § 1692(e)(5).

---

[9] As discussed below, Mr. Ramirez does not have a cause of action under the Texas Debt Collection Act because the TDCA is exhaustive. However, even in this instance a debt collector that actually violates the law is not afforded more protection than a debt collector that merely threatens to violate the law. Here, Mr. Ramirez has a cause of action under the statute that the Defendants actually violated, 11 U.S.C. § 362. There are other remedies available to Mr. Ramirez and the TDCA's failure to provide redress for a particular harm does not render it futile.

Texas Mechanical also violated § 1692(f) which prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect a debt.  Texas Mechanical kept the Truck for over four months after being told that it had a legal obligation to return it.  This blatant and protracted violation of the automatic stay was undoubtedly unconscionable.

15 U.S.C. § 1692(k) allows Mr. Ramirez to recover: (1) his actual damages; (2) additional damages as the court may allow, not to exceed $1,000.00; and (3) in the case of a successful action, the costs of the action, together with reasonable attorney's fees.

Texas Mechanical violated 15 U.S.C. §§ 1692 (e) & (f), making it liable for $9,444.75 in damages, plus Mr. Ramirez's attorney's fees and costs.

## VI.    Texas Debt Collection Practices Act

In order to state a claim under the TDCA, a plaintiff must show that: (1) the debt at issue is a consumer debt; (2) the defendant is a debt collector within the meaning of the TDCA; (3) the defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as a result of the defendant's wrongful act. *Sgroe v. Wells Fargo Bank, N.A.*, 941 F.Supp.2d 731, 743 (E.D. Tex. 2013).

Mr. Ramirez alleges that the Defendants violated the TDCA by using deception, unconscionable and unreasonable means to collect a debt; misrepresenting the status of the debt; and threatening to take actions it is legally not able to take.  Texas Finance Code § 392.301 addresses the use of threats, coercion or attempts to coerce.  Section 392.301(a)(8) prohibits a debt collector from threatening to take action prohibited by law.  As discussed above, it is clear why threatening to take an illegal action would be a threat, coercion or an attempt to coerce; but it is not equally clear why actually taking such an action is a threat or coercion.  While the Court's interpretation of the FDCA is bound by Fifth Circuit precedent, it will not extend the

holding in *Poirier* to the TDCA.  The Court is required to interpret Texas statutes in accordance with their plain language unless doing so would lead to an absurd result.  *In re Blair*, 408 S.W.3d 843, 859 (Tex. 2013), reh'g denied (Oct. 18, 2013).  The plain language of § 392.301(a)(8) only prohibits a debt collector from threatening to take action prohibited by law, and as discussed above, this result is logical.

While the TDCA also deals with unconscionable means of debt collection in § 392.303, the list of violations in the TDCA is exhaustive.  *See Cox v. Hilco Receivables, L.L.C.*, 726 F.Supp.2d at 667.  The illegal repossession of the Truck does not fall within an enumerated violation of § 392.303, and therefore there is no cause of action under § 392.303.

Mr. Ramirez has not shown a violation of the TDCA.

## VII.    Punitive Damages

Generally, an award of punitive damages requires a showing of egregious and intentional misconduct.  *In re Simms-Wilson*, 434 B.R. 452, 470 (Bankr. S.D. Tex. 2010).  Both the FDCA and the TDCA are silent regarding punitive damages.  Several courts reject the availability of punitive damages under the FDCA.  *See Thomas v. Law Firm of Simpson & Cybak*, 244 F. App'x 741, 743 (7th Cir. 2007) (citing *Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004)). Additionally, the Court knows of no case where punitive damages were awarded pursuant to the FDCA.  Although Texas courts have recognized the availability of punitive damages for a violation of the TDCA,[10] this is irrelevant in the instant case because Defendants did not violate the TDCA.  Accordingly, Mr. Ramirez will not be granted punitive damages under either the FDCA or the TDCA.

Mr. Ramirez is entitled to punitive damages under 11 U.S.C. § 362(k), which allows an award of punitive damages in appropriate circumstances.  Factors that a court may consider in

---

[10] *See Waterfield Mortg. Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App.—San Antonio 1996, no writ).

awarding punitive damages under § 362(k) are: (1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the creditor's motives in violating the stay; (4) any provocation by the debtor; and (5) whether actual damages are sufficient to deter future illegal conduct. *In re Simms-Wilson*, 434 B.R. at 470.

Mr. Transmission violated the automatic stay in two ways. First, it failed to withdraw the repossession order when it received notice of the bankruptcy filing. Second, acting through its agent, Mr. Transmission continued to exercise control over the Truck.

Conversely, Texas Mechanical did not willfully violate the stay when it repossessed the Truck because it was unaware of the bankruptcy case. Nevertheless, by failing to return the Truck after receiving notice of the bankruptcy filing, Texas Mechanical violated the automatic stay.

The automatic stay prohibits the continued exercise of control over estate property. *See In re Weber*, 719 F.3d 72, 79 (2d Cir. 2013) (retention of vehicle post-petition constituted exercise of control of estate property which violated automatic stay); *see also Thompson v. General Motors Acceptance Corp.*, 566 F.3d 699, 702-03 (7th Cir. 2009) (passively holding on to asset post-petition constitutes exercising control over asset and violates automatic stay); *Mitchell v. BankIllinois*, 316 B.R. 891, 899-91 (S.D. Tex. 2004) (refusal to return vehicle to debtor post-petition constituted violation of automatic stay). By failing to return the Truck after being notified of the commencement of the bankruptcy case, both defendants willfully violated the stay. This factor weighs in favor of awarding punitive damages because both Defendants knew that they were violating the stay and chose not to rectify their violations. Mr. Transmission had a duty to pay Texas Mechanical for its repossession efforts in order to have the Truck

returned to Mr. Ramirez.  Likewise, Texas Mechanical had an unqualified duty to return the Truck even though it had not been paid.

Mr. Hutchison's testimony suggests that Texas Mechanical would be unable to pay damages.  Mr. Hutchison testified that his net income for 2012 was $17,000.00.  Mr. Hutchison's daughter recently passed away and he is now responsible for his minor grandchild.  He also has one minor child of his own and two daughters in college.  At the time of trial in December, 2013, he was two months behind on his mortgage payments.

Mr. Weiss testified that Mr. Transmission did not pay Texas Mechanical for its efforts because it could not afford to do so.  Although the Court generally found Mr. Weiss to be a credible witness, it rejects this justification.  Mr. Transmission engaged Texas Mechanical to repossess the Truck and understood at the time of engagement that it would have to reimburse Texas Mechanical for the services rendered.  Mr. Transmission had done business with Texas Mechanical for ten years prior to this case, and there was no evidence to suggest that it had ever been unable to pay Texas Mechanical for its services in the past.  In fact, there was no evidence to suggest that Mr. Transmission was in a compromised financial position of any kind.

Mr. Ramirez incurred the debt to Mr. Transmission and issued two post-dated checks for the services.  Upon his first bankruptcy filing he canceled the post-dated checks.  There was no evidence that Mr. Ramirez ever offered to satisfy the debt.  Mr. Ramirez's actions provide some justification for the repossession because Mr. Transmission wanted to be compensated for the services it rendered.  In balancing Mr. Ramirez's actions with the Defendants' stay violations, Mr. Ramirez's actions are not of sufficient weight to overcome a finding of punitive damages.

Texas Mechanical's stay violation was motivated by its desire to be paid for its repossession efforts.  Mr. Transmission asserts that its stay violation was motivated by an

inability to pay Texas Mechanical's fees, which as discussed above, the Court rejects.  Neither justification weighs against a finding of punitive damages.

While there is no evidence that either party acted with malice or was motivated by a desire to inflict harm on Mr. Ramirez, both parties acted in reckless disregard towards Mr. Ramirez.  The Defendants deprived Mr. Ramirez of his property for over four months.  Both Defendants knew of the bankruptcy case within days after the Truck was repossessed.  Mr. Ramirez's counsel contacted both Defendants on numerous occasions requesting return of the Truck.  Both Defendants were served with the complaint in this case approximately one month before the Truck was returned.  The Defendants had ample notice that their refusal to return the Truck, or refusal to cause the Truck to be returned, was a flagrant violation of the automatic stay. Moreover, the Truck was significantly damaged while in the Defendants' care.  The parties' behavior was egregious and warrants punitive damages.

The Defendants are jointly and severally liable for $9,444.75 in damages and for Mr. Ramirez's attorney's fees and costs.  At trial the parties agreed to bifurcate the hearing on Mr. Ramirez's attorney's fees until after the Court determined whether Mr. Ramirez was, in fact, entitled to fees.  Mr. Ramirez's attorney's fees are likely significant as the case was commenced on April 2, 2013 and went to trial on December 13, 2013.  After the evidentiary hearing on attorney's fees, the Court may determine that the actual damages and attorney's fees are sufficient to deter future illegal conduct without the imposition of a material amount of punitive damages.  The Court provisionally finds that punitive damages are warranted, with a final determination of the amount of damages to be made after the evidentiary hearing on attorney's fees.

## VIII.   Cross-Complaint

Texas Mechanical's cross claim seeks reimbursement of the $5,584.00 in costs and expenses it incurred to repossess the Truck.  To succeed on a breach of contract claim a plaintiff must show: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages as a result of breach.  *May v. Ticor Title Ins.*, 422 S.W.3d 93, 100 (Tex. App. 2014), reh'g overruled (Mar. 5, 2014).

An implied contract exists when the facts and circumstances show that the parties mutually intended to contract—i.e. a meeting of the minds.  *Ervin v. Mann Frankfort Stein & Lipp CPAs, L.L.P.*, 234 S.W.3d 172, 182-83 (Tex. App.—San Antonio 2007, no pet.).  The determination of whether there is a meeting of the minds is based on the parties' objective actions, not on their alleged subjective states of mind.  *Id*.  When there is a dispute regarding whether there was a meeting of the minds, it is a question of fact.  *Hallmark v. Hand*, 885 S.W.2d 471, 476 (Tex. App.—El Paso 1994, writ denied).

It is undisputed that Mr. Transmission authorized Texas Mechanical to repossess the Truck, and inadvertently failed to revoke such authorization after being informed of Mr. Ramirez's second bankruptcy petition.  Texas Mechanical and Mr. Transmission had done business with each other for ten years prior to this case.  There is no testimony suggesting that Mr. Transmission ever failed to pay for services rendered by Texas Mechanical.  Texas Mechanical exerted efforts to repossess the Truck for eleven months.  Mr. Hutchison testified about the steps Texas Mechanical took to repossess the Truck and why this particular repossession was more costly than most others.  The parties' actions show a meeting of the minds.  Both parties intended that Texas Mechanical would repossess the Truck and that Mr.

Transmission would pay Texas Mechanical for doing so.  Mr. Transmission is liable for the $5,584.00 incurred by Texas Mechanical to repossess and store the Truck.

Texas Mechanical's request for its attorney's fees is denied.  Texas Civil Practice and Remedies Code § 38.001 provides for the recovery of attorney's fees for breaches of oral and written contracts.  *See* Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8).  Where a contract does not expressly provide for attorney's fees, a party suing on a breach of contract may still be able to recover reasonable attorney's fees. *Border Gateway, L.L.C. v. Gomez*, 14-10-01266-CV, 2011 WL 4361485 (Tex. App.—Houston [14th Dist.] Sept. 20, 2011, no pet.)  To recover statutory attorney's fees, the claimant must be represented by an attorney and his or her claim must be presented to the opposing party or to a duly authorized agent of the opposing party.  *Id*.  Moreover, the recovery of attorney's fees is only permitted if the opposing party fails to tender payment before the expiration of thirty days after the claim is presented.  *Id*.

It is Texas Mechanical's burden to prove presentment and failure to tender performance. *See Panizo v. Young Men's Christian Ass'n of Greater Houston Area*, 938 S.W.2d 163, 168 (Tex. App.—Houston [1st Dist.] 1996, no writ).  No particular form of presentment is required, however filing a suit, by itself, is not a demand within the terms of § 38.002.  *Id*.  Texas Mechanical's presentment of its claim need not be done by its attorney.  *See Sunbeam Envtl. Services, Inc. v. Texas Workers' Comp. Ins. Facility*, 71 S.W.3d 846, 851 (Tex. App.—Austin 2002, no pet.).  However, there must be some evidence that Texas Mechanical was, in fact, represented by counsel when it presented its claim to Mr. Transmission.  *Id.*

The record is devoid of any such evidence.  There is evidence that Texas Mechanical requested that Mr. Transmission pay the repossession costs in early February at the time that Texas Mechanical refused to return the Truck.  While this request may suffice as a demand, there

is no evidence that Texas Mechanical was represented by counsel at the time of its demand. Moreover, Texas Mechanical's filing of its cross-claim, without more, does not suffice as presentment of its claim. Texas Mechanical has not met its burden and will not be awarded its attorney's fees.

Texas Mechanical will not be awarded damages under a theory of fraud by non-disclosure. Under Texas law the elements of fraud are: (1) a material misrepresentation; (2) made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion; (3) made with the intention of inducing another party to act on the misrepresentation; and (4) the other party acts in reliance on the misrepresentation thereby suffering an injury. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001). The Texas Supreme Court has held that fraud by non-disclosure is simply a subcategory of fraud because, where a party has a duty to disclose, the non-disclosure may be as misleading as a positive misrepresentation of facts. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). Failure to disclose information is actionable only when there is a duty to disclose. *Lombana v. AIG Am. Gen. Life Ins. Co.*, 01-12-00168-CV, 2014 WL 810858 (Tex. App. Feb. 27, 2014). The duty to disclose may arise: (1) when the parties have a confidential or fiduciary relationship; (2) when one party voluntarily discloses information; (3) when one party makes a representation which gives rise to the duty to disclose new information that the party is aware makes the earlier representation misleading or untrue; or (4) when one party makes a partial disclosure and conveys a false impression, which gives rise to the duty to speak. *Id*.

Mr. Transmission originally represented to Texas Mechanical that it had the right to repossess the Truck. When it learned of the bankruptcy, Mr. Transmission had a duty to disclose this information to Texas Mechanical because it made its earlier representation untrue. Despite

this duty, Texas Mechanical has not satisfied the elements of fraud by non-disclosure.  Texas Mechanical has not shown that Mr. Transmission's failure to disclose Mr. Ramirez's bankruptcy was made with the intention of inducing Texas Mechanical to act.  In, fact the testimony of Mr. Weiss suggests that Mr. Transmission's failure to disclose Mr. Ramirez's bankruptcy to Texas Mechanical was inadvertent.  As soon as Mr. Transmission was informed of the bankruptcy post-repossession, it informed Texas Mechanical and instructed Texas Mechanical to return the Truck.  Texas Mechanical has not proved a claim of fraud by non-disclosure.

Texas Mechanical also seeks an order that Mr. Transmission reimburse it for any punitive damages or attorney's fees that Texas Mechanical is ordered to pay to Mr. Ramirez.  As provided above, Texas Mechanical's liability under 11 U.S.C. § 362 and the FDCA stems from its refusal to return the Truck after being notified of Mr. Ramirez's bankruptcy.  Despite any wrongdoing by Mr. Transmission, Texas Mechanical had an unqualified duty to return the Truck.  The Defendants are jointly and severally liable for Mr. Ramirez's attorney's fees and each will be assessed a specific amount of punitive damages for their own wrongdoing.  Mr. Transmission will not be ordered to reimburse Texas Mechanical for punitive damages or attorney's fees.

## Conclusion

Based on the foregoing, the Court must conduct an evidentiary hearing to determine the amount of Mr. Ramirez's attorney's fees and the amount (if any) of punitive damages. Following these determinations, the Court will issue its report and recommendation to the district court.  The Court will enter an order consistent with this Memorandum Opinion.

SIGNED **June 4, 2014.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE